LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RONALD MONTESDEOCA, *on behalf of himself, FLSA Collective Plaintiffs, and the Class*, <br><br> Plaintiff, <br><br> PAOLA PAINTING AND RENOVATIONS LLC d/b/a SUREGREEN, <br> PAOLA CASTANEDA, <br> and RAUL CASTANEDA, <br><br> Defendants. | Case No.: <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

---

Plaintiff, RONALD MONTESDEOCA ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, PAOLA PAINTING AND RENOVATIONS LLC d/b/a SUREGREEN, ("Corporate Defendant") PAOLA CASTANEDA and RAUL CASTANEDA ("Individual Defendants," and together with Corporate Defendant, "Defendants") and states as follows:

**INTRODUCTION**

1.  Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid

overtime due to a fixed salary, (2) unpaid wages, including overtime, due to time-shaving, (3) unpaid wages due to rounding, (4) liquidated damages and (5) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid overtime due to a fixed salary, (2) unpaid wages, including overtime, due to time-shaving, (3) unpaid wages due to rounding, (4) late payment of wages, (5) statutory penalties, (6) liquidated damages and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff RONALD MONTESDEOCA is a resident of Queens County, New York.

6. Corporate Defendant PAOLA PAINTING AND RENOVATIONS LLC d/b/a SUREGREEN is a domestic limited liability company organized under the laws of the State of New York, with a corporate headquarters at 1 Georgia Ave #GB BRONXVILLE, NY 10708 and an address for service of process located at 60 W MAIN ST, MT KISCO, NY, United States, 10549. *See* **Exhibit A**; **Exhibit B**.

7. Individual Defendant RAUL CASTANEDA is the owner and operator of Corporate Defendant PAOLA PAINTING AND RENOVATIONS LLC d/b/a SURE GREEN PAINTERS. RAUL CASTANEDA exercised control over the employment terms and

conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. RAUL CASTANEDA had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees of each of the three Businesses could complain to RAUL CASTANEDA directly regarding any of the terms of their employment, and RAUL CASTANEDA would have the authority to effect any changes to the quality and terms of employees' employment. RAUL CASTANEDA directly reprimanded any employee who did not perform his duties correctly. RAUL CASTANEDA exercised functional control over the business and financial operations of the Corporate Defendant.

8.  Individual Defendant PAOLA CASTANEDA, the wife of Defendant RAUL CASTANEDA, is an owner and operator of Corporate Defendant PAOLA PAINTING AND RENOVATIONS LLC d/b/a SURE GREEN PAINTERS. PAOLA CASTANEDA exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. PAOLA CASTANEDA had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all times, employees of each of the three Businesses could complain to PAOLA CASTANEDA directly regarding any of the terms of their employment, and PAOLA CASTANEDA would have the authority to effect any changes to the quality and terms of employees' employment. PAOLA CASTANEDA directly reprimanded any employee who did not perform his duties correctly. PAOLA CASTANEDA exercised functional control over the business and financial operations of the Corporate Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

9. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to, drivers, laborers, helpers, construction workers, and painters) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

10. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to (i) pay them overtime due to an improper fixed salary, (ii) pay them proper wages due to time-shaving, and (iii) pay them proper wages due to an impermissible policy of rounding. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

11. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

12. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to, drivers, laborers, helpers, construction workers, and painters) employed by Defendants on or

after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

13. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

14. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

15. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime compensation due to an improper fixed salary, (ii) failing to pay proper wages due to a policy of time-shaving, (iii) failing to pay proper wages due to an impermissible policy of rounding, (iv) failing to pay wages within seven (7) calendar days of the end of the week in which they were earned, (v) failing to provide proper wage statements per requirements of the New York Labor Law, and (vi) failing to provide proper wage and hour notices, at date of hiring and annually, per

requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

16. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

17. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or

varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

18. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

19. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a) Whether Defendants employed Plaintiff and Class members within the meaning of the New York law;

(b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

(c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class members for their work;

(d) Whether Defendants properly notified Plaintiff and Class members of their regular hourly rate and overtime rate;

(e) Whether Defendants paid Plaintiff and Class members the proper overtime compensation under the New York Labor Law;

(f) Whether Defendants improperly rounded down Plaintiff's and Class Members' hours worked;

(g) Whether Defendants properly compensated Plaintiff and Class Members within seven (7) days after the end of the week in which their wages were earned;

(h) Whether Defendants provided proper wage statements to Plaintiff and Class members per requirements of the New York Labor Law; and

(i) Whether Defendants provided proper wage and hour notices to Plaintiff and Class members, at date of hiring and annually, per requirements of the New York Labor Law.

## STATEMENT OF FACTS

20. From on or about March 4, 2018 until on or about March 14, 2020, Plaintiff RONALD MONTESDEOCA was employed by Defendants as a general laborer and painter for Defendants' "SureGreen" business.

21. Plaintiff's duties included handling and transporting other employees, materials, and equipment to and from job sites in New York, Bronx, Queens, Kings, Richmond, and Westchester Counties, assembling scaffolding, and digging or filling in pits throughout the construction process. Based on Plaintiff's duties was considered a "manual worker" under NYLL § 190(4). Similarly, based on Class Members' duties, Class Members were also considered "manual workers" under NYLL § 190(4).

22. Throughout Plaintiff MONTESDEOCA's employment with Defendants, Plaintiff was sent to work at various worksites by Defendants. From the start of his employment until October

2018, Plaintiff worked at the "CHAMBERS STREET" location. From October 2018 until January 2019 Plaintiff worked at the "LEONARD STREET" location. From January 2019 until April 2019 Plaintiff worked at the "HALLETTS POINT" location. From April 2019 until June 2019 Plaintiff worked at the "GOTHAM" location. From June 2019 to the end of his employment with Defendants, Plaintiff worked at the "CITY VIEW TOWER" location. During his employment by Defendants, Plaintiff was never required to clock in to work at the beginning of each workday or clock out of work at the conclusion of each workday.

23. From the start of his employment until October 2018, Plaintiff MONTESDEOCA was employed at the "CHAMBERS STREET" location and worked from 7:00 a.m. to 3:30 p.m. Monday through Saturday but was regularly required to stay between one (1) to two (2) hours past his scheduled shift. As a result, during this time period, Plaintiff was scheduled to work approximately fifty-one (51) hours per week. Including his hours that were time-shaved, Plaintiff worked approximately fifty-seven (57) to sixty-three (63) hours per week.

24. From October 2018 to January 2019, Plaintiff worked at the "LEONARD STREET" location, and was scheduled to work from 7:00 a.m. to 3:30 p.m., Monday through Saturday but was regularly required to stay between one (1) to two (2) hours past his scheduled shift. As a result, during this time period, Plaintiff was scheduled to work approximately fifty-one (51) hours per week. However, including his hours worked off the clock, Plaintiff worked approximately fifty-seven (57) to sixty-three (63) hours per week.

25. From January 2019 to April 2019 Plaintiff worked at the "HALLETTS POINT" location and was scheduled to work from 7:00 a.m. to 6:30 p.m. Monday through Saturday but was regularly required to stay between one (1) to two (2) hours past his scheduled shift. As a

result, during this time period, Plaintiff was scheduled to work approximately sixty-nine (69) hours per week. However, including his hours worked off the clock, Plaintiff worked approximately seventy-five (75) to eighty-one (81) hours per week

26. From April 2019 to June 2019 Plaintiff worked at the "GOTHAM" and was scheduled to work from 7:00 a.m. to 3:30 p.m. Monday through Saturday but was regularly required to stay between one (1) to two (2) hours past his scheduled shift. As a result, during this time period, Plaintiff was scheduled to work approximately fifty-one (51) hours per week. However, including his hours worked off the clock, Plaintiff worked approximately fifty-seven (57) to sixty-three (63) hours per week.

27. From June 2019 to the end of his employment with Defendants, Plaintiff worked at the "CITY VIEW TOWER" location and was scheduled to work from 7:00 a.m. to 3:30n p.m. Monday through Saturday but was regularly required to stay between one (1) to two (2) hours past his scheduled shift. As a result, during this time period, Plaintiff was scheduled to work approximately fifty-one (51) hours per week. However, including his hours worked off the clock Plaintiff worked approximately fifty-seven (57) to sixty-three (63) hours per week.

28. From the start his employment by Defendants to in or around October 2018, Plaintiff was compensated at a fixed salary for his hours worked at the "CHAMBERS STREET" (New York, New York) location, one hundred and thirty ($130) dollars per day, or seven hundred and eighty ($780) dollars per week. However, there was never any agreement between Plaintiff and Defendants that this fixed salary was to cover Plaintiff's overtime hours worked in excess of forty (40).

29. From in or around October 2018 to in or around October 2019 Plaintiff was compensated for his hours worked at a fixed salary at one hundred and forty ($140) dollars per day,

or eight hundred and forty ($840) dollars per week at the "LEONARD STREET" (New York, New York) "HALLETTS POINT" (Queens, New Yok) "GOTHAM" (New York, New York) and "CITY VIEW TOWER" (Queens, New York) locations. However, there was never any agreement between Plaintiff and Defendants that this fixed salary was to cover Plaintiff's overtime hours worked in excess of forty (40).

30. From in or around October 2019 to the end of his employment with Defendants, Plaintiff was compensated at an hourly rate of twenty-seven ($27) dollars for all hours worked at the "CITY VIEW TOWER" (Queens, New York) location. However, Plaintiff was still compensated on a fixed salary rate of one hundred and forty ($140) dollars for his Saturdays worked. Prior to October 2019, FLSA Collective Plaintiffs and Class Members similarly were improperly paid on a fixed salary which did not properly include overtime premiums.

31. From the start of his employment to October 2019, Plaintiff was compensated for his work at Defendants at a fixed salary rate for all hours worked. However, there was never any agreement between Plaintiff and Defendants that this fixed salary was to cover Plaintiff's overtime hours. From March 4, 2018, to in or around January 2019, Plaintiff was scheduled to work approximately fifty-one (51) hours per week, but Plaintiff actually worked approximately fifty-seven (57) to sixty-three (63) hours per week. From in or around January 2019 to in or around April 2019, Plaintiff was scheduled to work approximately sixty-nine (69) hours per week, but Plaintiff worked approximately seventy-five (75) to eighty-one (81) hours per week. From April 2019 to in or around October 2019, Plaintiff was scheduled to work approximately fifty-one (51) hours per week, but Plaintiff actually worked approximately fifty-seven (57) to sixty-three (63) hours per week. However, during these periods of employment by Defendants, Plaintiff did not receive any overtime premium payments as required under the FLSA and NYLL.

FLSA Collective Plaintiffs and Class members were similarly paid at a fixed salary rate and failed to receive any overtime wages for hours worked over forty (40) per week.

32. Whenever Plaintiff or other employees would complain to Defendant RAUL CASTANEDA about the unpaid overtime pay, Defendants would tell them "if you don't like it, leave." Plaintiff observed Defendant RAUL CASTANEDA fire employees or change their schedules due to the complaints about their missing wages.

33. Starting in October 2019, to the end of his employment, Plaintiff was paid at an hourly rate of twenty-seven ($27) dollars per hour.

34. Throughout his employment, Plaintiff was required to stay past his one (1) to two (2) hours past his scheduled shift. As a result, Plaintiff was undercompensated by approximately six (6) to twelve (12) hours per week due to Defendants time-shaving policy. FLSA Collective Plaintiffs and Class members were similarly required to stay past their scheduled shifts and were not compensated for this time.

35. Throughout Plaintiff's employment, Plaintiff had his hours rounded down to the nearest half-hour increment, to Plaintiff's detriment. FLSA Collective Plaintiffs and Class members similarly had their hours rounded down to the nearest half-hour increment.

36. Starting in October 2019, when Plaintiff began to be compensated by check and received wage statements, Defendants failed to properly compensate Plaintiff in a timely manner as required by the NYLL. Defendants compensated Plaintiff with his wages approximately nine (9) to ten (10) days after the last day worked in his workweek, which violates Labor Law § 191(1)(a), which requires "manual workers" to be compensated "not later than seven calendar days after the end of the week in which wages are earned." *See* **Exhibit B**.

37. The wage statements provided by Defendants to Plaintiff were fraudulent at all times as they failed to reflect the actual number of hours that Plaintiff worked and Plaintiff's proper compensation. From the start of his employment to October 2019, Plaintiff did not receive any wage statements as he was paid on a fixed salary basis, in cash. Similarly, FLSA Collective Plaintiffs and Class members were paid on a fixed salary basis, in cash and did not receive any wage statements. Starting October 2019 to the end of his employment, Plaintiff's wage statements failed to reflect his proper wages for all hours worked due to Defendants' policy of time-shaving and rounding. Similarly, FLSA Collective Plaintiffs and Class members received fraudulent pay stubs from Defendants that failed to reflect all hours worked each workweek due to Defendants' policy of time-shaving and rounding.

38. Plaintiff never received a proper wage and hour notice from the Defendants at hiring. Similarly, FLSA Collective Plaintiffs and Class members never received proper wage and hour notices from Defendants.

39. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members their proper overtime due to an improper fixed salary.

40. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked due to Defendants' policy of time-shaving.

41. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked due to Defendants' policy rounding.

42. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class members within seven (7) calendar days after the end of the week in which wages are earned, in violation of the NYLL.

43. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class members, in violation of the NYLL.

44. Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class members, at the beginning of employment and annually thereafter, in violation of the NYLL.

45. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

46. Plaintiff realleges and reavers Paragraphs 1 through 43 of this class and collective action Complaint as if fully set forth herein.

47. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

49. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

50. At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek due to a fixed salary.

51. At all relevant times, Defendants had a policy and practice of failing to pay proper wages to Plaintiff and FLSA Collective Plaintiffs due to Defendants' policy of time-shaving.

52. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs (i) the proper overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week due to fixed salaries and (ii) their proper wages due to Defendants policy of time-shaving.

53. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

54. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

55. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime due to fixed salary, unpaid wages due to time shaving, plus an equal amount as liquidated damages.

56. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

57. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

58. Plaintiff realleges and reavers Paragraphs 1 through 55 of this Class and Collective Action Complaint as if fully set forth herein.

59. At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

60. Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due to a fixed salary.

61. Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper compensation for all hours worked due to a policy of time-shaving.

62. Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper compensation for all hours worked due to a policy of rounding.

63. Defendants knowingly and willfully failed to compensate employees within seven (7) calendar days after the end of the week in which wages are earned, in violation of the NYLL.

64. Defendants knowingly and willfully failed to provide proper wage and hour notices, at the date of hiring and annually thereafter, to Plaintiff and Class members, as required by New York Labor Law § 195(1).

65. Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class members with every wage payment, as required by New York Labor Law § 195(3).

66. Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid overtime compensation due to a fixed salary, unpaid wages due to time shaving, unpaid wages due to rounding, damages for frequency of pay violations, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as

provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid overtime compensation due to fixed salaries due under the FLSA and NYLL;

d. An award of unpaid wages due under the FLSA and the NYLL , including those due to Defendants' time-shaving practices;

e. An award of unpaid wages due under the FLSA and the NYLL, including those due to Defendants' improper rounding practices;

f. An award of unpaid wages due under the NYLL, due to Defendants' frequency of pay violations;

g. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime compensation, pursuant to the FLSA;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime compensation, pursuant to the NYLL;

j. An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

m. Designation of Plaintiff as Representative of the Class; and

n. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: February 15, 2022

                                                                               Respectfully submitted,

By:    */s/ C.K. Lee*
       C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*